IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| KEITH MATTEI, | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| V. | § | 1-15-CV-139  RP |
| | § | |
| THE INTERNATIONAL CONFERENCE OF | § | |
| FUNERAL SERVICE EXAMINING | § | |
| BOARDS, et al., | § | |
| | § | |
| Defendants | § | |

## ORDER

Before the Court are Texas Funeral Service Commission Defendants' Motion to Dismiss, filed April 2, 2015 (Clerk's Dkt. #25); Individual Conference Defendants' Motion to Dismiss for Lack of Personal Jurisdiction or, Alternatively, for Failure to State a Claim, filed May 18, 2015 (Clerk's Dkt. #28); Defendant International Conference of Funeral Service Examining Boards' Motion to Dismiss, filed May 18, 2015 (Clerk's Dkt. #30); and the responsive pleadings thereto,  Having reviewed the pleadings, the applicable case law, and the entire case file, the Court issues the following Order.

## I.  BACKGROUND

Defendant Texas Funeral Service Commission (the "Commission") is a state agency tasked pursuant to Texas statute with the regulation and administration of licenses for funeral directors and embalmers.  As a prerequisite for obtaining such licenses in Texas, the Commission requires an applicant to pass a national standardized licensing examination (the "NBE") developed and administered by the International Conference of Funeral Service Examining Boards (the "Conference").  Plaintiff states in his complaint that he passed the NBE in 2011, and has been licensed as a funeral director and an embalmer in the state of Texas since August 5, 2014.

According to Plaintiff's complaint, the Conference has been embroiled in a dispute with

Plaintiff's alma mater, the American Academy McAllister Institute of Funeral Service, Inc. ("AAMI"), over allegations that AAMI orchestrated a cheating scheme involving the sharing of confidential NBE test information.   The Conference entered into a settlement agreement with AAMI in December of 2014.

Because of Plaintiff's alleged participation in said scheme, the Conference has informed Plaintiff that it is, among other things, invalidating his passing NBE scores and barring Plaintiff from re-taking the NBE for five years.  The Conference notified the Commission of its decisions.  Plaintiff asserts that as a result, the Commission has instituted disciplinary action against Plaintiff seeking to revoke his license in Texas.

On February 13, 2015, Plaintiff filed this action against the Conference, the Conference's board of directors and executive director, in both their individual and official capacities (the "Individual Conference Defendants"), the Commission, and the Commission's board members, executive director, and presiding officer, in both their individual and official capacities (the "Individual Commission Defendants").  Plaintiff asserts claims against all of the Defendants under 42 U.S.C. § 1983 ("Section 1983") for violation of his constitutional rights to procedural and substantive due process, free speech, and equal protection.

Plaintiff additionally asserts various state law tort claims against the Conference and the Individual Conference Defendants (collectively, the "Conference Defendants"), including breach of contract, breach of the covenant of good faith and fair dealing, defamation and defamation per se, and tortious interference with existing and prospective business relations.  Plaintiff further asserts claims against the Conference Defendants seeking declaratory judgments regarding the Conference's allegedly copyrighted test materials and Plaintiff's use thereof, namely declarations of fair use, implied license, non-infringement, and invalid copyrights, as well as a judgment declaring the non-disclosure agreement ("NDA") entered into by Plaintiff prior to taking the NBE unenforceable.

Finally, Plaintiff asserts the Commission and the Individual Commission Defendants (collectively, the "Commission Defendants") violated his civil rights when they required him to take the NBE, and seeks a judgment declaring such requirement invalid.

Plaintiff seeks compensatory damages, punitive damages, declaratory relief and injunctive relief.  Defendants have now filed three separate motions to dismiss Plaintiff's claims.  The Court will address each motion in turn.

## II. THE CONFERENCE'S MOTION

The Conference moves to dismiss Plaintiff's claims against it for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).

## A.    Standard of Review

When evaluating a motion to dismiss under Rule 12(b)(6) the complaint must be liberally construed in favor of the plaintiff and all facts pleaded therein must be taken as true.  *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).  Although Federal Rule of Civil Procedure 8 mandates only that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief," this standard demands more than unadorned accusations, "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement."  *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-57 (2007).  Rather, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  *Id.*, 550 U.S. at 570.  The Supreme Court has made clear this plausibility standard is not simply a "probability requirement," but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The standard is properly guided by "[t]wo working principles."  *Id*.  First, although "a court

3

must accept as true all of the allegations contained in a complaint," that "tenet" "is inapplicable to legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*, 556 U.S. at 678-79.  Second, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*, 556 U.S. at 679.  Thus, in considering a motion to dismiss the court must initially identify pleadings that are no more than legal conclusions not entitled to the assumption of truth, then assume the veracity of well-pleaded factual allegations and  determine whether those allegations plausibly give rise to an entitlement to relief.  If not, "the complaint has alleged-but it has not 'show[n]'–'that the pleader is entitled to relief.'" *Id*. (quoting FED. R. CIV. P. 8(a)(2)).

**B.**    **Discussion**

   **1. Section 1983 Claims**

   The Conference first argues Plaintiff's claims under Section 1983 for the alleged violation of his civil rights should be dismissed because the Conference is not a state actor or, alternatively, because Plaintiff fails to state a constitutional claim.

   To state a cause of action under Section 1983, the plaintiff must allege the person who caused the deprivation of a federal right was acting under color of law.  *Cinel v. Connick*, 15 F.3d 1338, 1342 (5th Cir. 1994).  A private actor is amenable to suit under Section 1983 only if "there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001) (internal quotations and citations omitted).  Three tests are used to evaluate whether the conduct of a private actor can be fairly attributable to the state: (1) where the private entity performs a function that is exclusively reserved to the state (the "public function test"); (2) where the state exercises coercive power over the private entity or provides significant

encouragement (the "state compulsion test"); or (3) where the state has inserted itself into a position of interdependence with the private entity such that the state became a joint participant in the conduct (the "nexus" or "state action test"). *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549-50 (5th Cir. 2005) (internal quotations and citations omitted).

Federal courts have consistently held that private entities administering examinations relied upon by the state do not qualify under any of the aforementioned tests as state actors for purposes of Section 1983 claims. *See Boggi v. Med. Review & Accrediting Council*, 415 F. App'x 411 (3rd Cir. 2011); *Sanjuan v. Am. Bd. of Psychiatry & Neurology*, 40 F.3d 247 (7th Cir. 1994); *Langston v. ACT*, 890 F.2d 380 (11th Cir. 1989); *Johnson v. Educ. Testing Serv.*, 754 F.2d 20 (1st Cir. 1985); *Jaramillo v. Prof'l Examination Serv.*, 515 F. Supp. 2d 292  (D. Conn. 2007); *Tolleson v. Educ. Testing Serv.*, 832 F. Supp. 158 (D. S.C. 1992); *Stewart v. Hannon*, 469 F. Supp. 1142 (N.D. Ill. 1979).  This is true even when the test in question is required for state licensure.  *See Jallali v. Nat'l Bd. of Osteopathic Med. Exam'rs, Inc.*, 2012 U.S. Dist. LEXIS 107999 (S.D. Fla. Aug. 2, 2012); *Metzger v. Nat'l Comm'n on Certification of Physician Assistants*, 2001 U.S. Dist. LEXIS 658 (E.D. Pa. Jan. 25, 2001); *Sammons v. National Comm'n on Certification of Physician Assistants*, 104 F. Supp. 2d 1379 (N.D. Ga. 2000).

In *Langston v. ACT*, the Eleventh Circuit considered whether the American College Testing Program ("ACT"), which administers a multiple choice college entrance exam (the "ACT Test") used by many public universities in the admissions process, was a state actor for purposes of Section 1983 liability.  *Langston*, 890 F.2d at 381-83.  In *Langston*, ACT cancelled the plaintiff's score on the ACT Test for suspected cheating and, as a result, the public university at which plaintiff was enrolled declared Plaintiff ineligible to play football under the rules of the National Collegiate Athletic Association.  *Id.* at 383.  The plaintiff sued ACT for, among other things, the violation of his due process rights pursuant to Section 1983.

Emphasizing that a "mere showing that a private person performs a public function is not

enough to establish state action," the Eleventh Circuit found ACT's performing the public function of administering a test relied upon by public institutions did not render ACT a state actor under the public function test. *Id*. at 384-85.   The Eleventh Circuit further found that ACT developed its own policies to ensure the reliability of student test scores, and the reliance by state institutions on the validity of test results was not enough to convert ACT's actions into those of the state under the state compulsion test. *Id*. at 385.   Finally, noting there was no evidence to indicate any public institution exerted influence over ACT's decisions, the Eleventh Circuit held ACT was not a state actor under the nexus/joint-action test. *Id*.   Accordingly, the Eleventh Circuit held ACT was not acting under color of law when it invalidated the plaintiff's test score.

Like ACT, the Conference merely administers a standardized exam upon which public entities rely, and has no authority over the decisions made by such entities.   In Texas, it is the Commission that imposes certification requirements on and issues licenses to funeral directors and embalmers in the State, not the Conference.   The Conference "merely provides a mechanism by which a candidate may meet the state requirements." *Metzger,* 2001 U.S. Dist. LEXIS 658 at 8. In sum, a private entity that administers a standardized exam and reports the scores to the state for purposes of licensure, but lacks the authority to make decisions regarding the processing and issuance of such licenses, is not a state actor for purposes of Section 1983. *See Johnson*, 754 F.2d at 24-25.   Plaintiff has failed to present any legal authority holding otherwise.

Plaintiff argues the Conference is nonetheless a de facto state actor by virtue of its membership, which is comprised of funeral service regulatory boards from each of the fifty states and several provinces in Canada.   The Supreme Court has rejected such an argument, however, holding that an organization with public member institutions from a multitude of states does not act under color of law because it is independent of any one particular state. *National Collegiate Athletic Ass'n v. Tarkanian*, 488 U.S. 179, 193-94 (1988).   It is only when an organization's membership consists entirely of institutions located in the same state that such organization may

6

be construed as a state actor for purposes of Section 1983. *Brentwood Acad.*, 531 U.S. at 298. Because the Conference's membership is comprised of public entities from all fifty states, the Conference does not act under the color of law of any one state, and is not a state actor for purposes of Section 1983. Because the Conference is not a state actor, Plaintiff's Section 1983 claims against the Conference are properly dismissed.

### 2. State Law Claims

As an initial matter, the Conference urges the Court, should Plaintiff's constitutional claims be dismissed, to decline to exercise supplemental jurisdiction over Plaintiff's state law claims. However, Plaintiff's constitutional claims are not the sole basis for federal jurisdiction over this matter. Plaintiff also asserts claims for declaratory judgments relating to Plaintiff's use of the Conference's allegedly copyrighted test materials, namely declarations of fair use, implied license, non-infringement, and invalid copyrights. Federal courts have exclusive original jurisdiction over claims relating to copyrights. *See* 28 U.S.C. § 1338(a); *Goodman v. Lee*, 815 F.2d 1030, 1031-32 (5th Cir. 1987). The Court thus finds no compelling reason to remand Plaintiff's state law claims.

The Conference also argues Plaintiff's claims for breach of the covenant of good faith and fair dealing, defamation and defamation per se, and tortious interference with existing and prospective business relations, as well as Plaintiff's claim for a judgment declaring the NDA unenforceable, should be dismissed for failure to state a claim. .

### a. Breach of the Duty of Good Faith and Fair Dealing

The Conference maintains Plaintiff's claim for breach of the duty of good faith and fair dealing should be dismissed because Plaintiff has failed to allege facts sufficient to show a special relationship exists between the parties such as would give rise to said duty. Under Texas law, a duty of good faith and fair dealing does not exist in all contractual relationships. *Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 225 (Tex. 2002). Such duty arises only "as a

result of a special relationship between the parties governed or created by a contract." *Arnold v. Nat'l Cnty. Mut. Fire Ins. Co.*, 725 S.W.2d 165, 167 (Tex. 1987). "The relationship is akin to the relationship of special trust and confidence in a fiduciary relationship and is to be imposed only in certain narrowly limited circumstances." *Wheeler v. Yettie Kersting Mem'l Hosp.*, 866 S.W.2d 32, 52 (Tex. App.–Houston [1st Dist.] 1993, no writ). Absent such a special relationship, "the duty to act in good faith is contractual in nature, and its breach does not amount to an independent tort." *Central Sav. & Loan Ass'n v. Stemmons Nw. Bank, N.A.*, 848 S.W.2d 232, 239 (Tex. App.–Dallas 1992, no writ). While a duty of good faith and fair dealing has been recognized in the insurance context, the Texas Supreme Court "has hesitated to extend the duty . . . to other contexts beyond the special relationship between an insurance company and its insured." *GTE Mobilnet Ltd. P'ship v. Telecell Cellular*, 955 S.W.2d 286, 295 (Tex. App.–Houston [1st Dist.] 1997, writ denied). Texas courts have declined to recognize a duty of good faith and fair dealing "in a large variety of situations, including supplier-distributor, mortgagor-mortgagee, creditor-guarantor, lender-borrower, franchisor-franchisee, issuer-beneficiary of letter of credit, employer-employee, and insurance company-third party claimant." *Id*.

Plaintiff concedes that no court in Texas or the Fifth Circuit has recognized a special relationship between a test administrator and a license applicant giving rise to a duty of good faith and fair dealing. Plaintiff urges the Court to recognize the existence of such duty in this context, arguing the Fifth Circuit has held testing services must act in good faith. *See Murray v. Educ. Testing Serv.*, 170 F.3d 514, 516 (5th Cir. 1999). In *Murray*, the Fifth Circuit recognized ETS, the testing service, owed a duty of good faith, but made clear the requirement arose from the contractual relationship between the parties. *See id*. ("the only contractual duty ETS owed to Murray was to investigate the validity of Murray's scores in good faith"). The Fifth Circuit has not imposed the extra-contractual duty of good faith and fair dealing on testing services.

In his complaint, Plaintiff has alleged only that he "entered into an agreement with the

conference creating a special relationship between Plaintiff and the Conference." (Plf. Am. Compl. ¶ 236). It is the nature of the relationship between the parties, not the mere existence of a contract, that determines whether the duty exists. The relationship must be so special as to warrant the imposition of a duty beyond the standard obligation of good faith and fair dealing implicit in every contract. Plaintiff has failed to allege facts showing that his relationship with the Conference was of such a unique and compelling nature, or in any way akin to a fiduciary relationship. Accordingly, the Court finds Plaintiff's claim for breach of the duty of good faith and fair dealing should be dismissed.

### b. Defamation

The Conference next contends Plaintiff's claims for defamation and defamation per se should be dismissed for failure to state a claim. The basis of Plaintiff's defamation and defamation per se claims are his allegations that the Conference made defamatory statements when notifying the Commission and the other state licensing boards of its decisions regarding Plaintiff's NBE scores. The Conference contends such statements were made in connection with quasi-judicial proceedings and thus cannot form the basis of a defamation claim.

A cause of action for defamation under Texas law requires the plaintiff to prove: (1) the defendant published a false statement; (2) defamatory to the plaintiff, in that it damaged the plaintiff's reputation, exposing him to financial injury; and (3) the defendant made the statement negligently as to its truth. *Green v. CBS Inc.*, 286 F.3d 281, 283 (5th Cir. 2002); *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998); *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex. 1989). "While a defamatory statement is one that tends to injure a person's reputation, such a statement is defamatory *per se* if it injures a person in her office, profession, or occupation." *Hancock v. Variyam*, 400 S.W.3d 59, 62 (Tex. 2013). However, communications made in the context of judicial, quasi-judicial, or legislative proceedings are absolutely privileged and cannot

9

form the basis of civil liability.  *Shanks v. AlliedSignal, Inc.*, 169 F.3d 988, 992 (5th Cir. 1999).  "An absolutely privileged communication is one for which, due to the occasion upon which it was made, no civil remedy exists, even though the communication is false and was made or published with express malice."  *Perdue, Brackett, Flores, Utt & Burns v. Linebarger, Goggan, Blair, Sampson & Meeks, L.L.P.*, 291 S.W.3d 448, 451 (Tex. App.–Fort Worth 2009, no pet.).

Plaintiff concedes statements made during Commission proceedings may be privileged. Plaintiff argues, however, that the allegedly defamatory statements were made prior to the initiation of any such proceeding and are therefore not covered by the privilege.

Under Texas law, "even communications made in contemplation of or preliminary to a quasi-judicial proceeding are privileged if they concern a matter that the quasi-judicial body is authorized to investigate and decide."  *Perdue*, 291 S.W.3d at 451.  *See also Reagan v. Guardian Life Ins. Co.*, 166 S.W.2d 909 (Tex. 1942) (potentially defamatory statement regarding licensee submitted to Insurance Commission prior to any proceeding is privileged); *5-State Helicopters, Inc. v. Cox*, 146 S.W.3d 254, 257 (Tex. App.–Fort Worth 2004, pet. denied) (complaint to the Federal Aviation Administration about behavior of agents prior to any investigation or proceeding is privileged).

Plaintiff does not dispute that the Commission and the other state licensing boards have the authority to investigate and initiate disciplinary proceedings against a licensee.  The public policy behind the application of the absolute privilege is to "ensure that the quasi-judicial decision-making body gets the information it needs."  *5-State Helicopters*, 146 S.W.3d at 257.  Public policy dictates that a person be able to impart pertinent information to a state licensing agency "unhampered by fear of retaliatory suits for defamation."  *Id*.

The Court is of the opinion that administrators of tests relied upon the state for purposes of licensure must be able to communicate with the licensing board without fear of a defamation suit. Such communications are privileged even when made prior to the formal initiation of proceedings.

Therefore, the Court finds the statements made by the Conference to the Commission and other state licensing boards are absolutely privileged, and Plaintiff's claims for defamation and defamation per se should be dismissed.

### c.  Tortious Interference

The Conference also moves to dismiss Plaintiff's claims for tortious interference with existing and prospective business relations for failure to state a claim.  The elements of tortious interference with an existing contract under Texas law are: (1) an existing contract subject to interference, (2) a willful and intentional act of interference with that contract, (3) which caused plaintiff's injury, and (4) resulted in actual damages or loss.  *Prudential Ins. Co. v. Fin. Review Servs., Inc*, 29 S.W.3d 74, 77 (Tex. 2000); *Powell Indus., Inc. v. Allen*, 985 S.W.2d 455, 456 (Tex. 1998); *Texas Beef Cattle Co. v. Green,* 921 S.W.2d 203, 210 (Tex. 1996).  *See also Stewart Glass & Mirror, Inc. v. U.S. Auto Glass Discount Ctrs., Inc.*, 200 F.3d 307, 316 (5th Cir. 2000) (applying Texas law).

Plaintiff alleges that he "has a valid employment contract with his current employer" and that the Conference "intentionally, tortiously, and unjustifiably interfered with Plaintiff's employment contract" by making false statements about Plaintiff.  (Plf. Am. Compl. ¶¶ 260, 262).  Plaintiff does not allege, however, that the Conference contacted his employer directly or otherwise intentionally interfered with the contract in question.  *See Amigo Broad., LP v. Spanish Broad. Sys.*, 521 F.3d 472, 493 (5th Cir. 2008) (to establish proximate cause, plaintiff must show defendant "took an active part in persuading a party to a contract to breach it").  Moreover, Plaintiff has not alleged how he has been injured as he is still employed under said employment contract.  His allegations thus fall short of stating a claim for tortious interference with existing business relations.

The elements of tortious interference with prospective business relations under Texas law are: (1) a reasonable probability the parties would have entered into a contractual relationship; (2)

11

an "independently tortious or unlawful" act by the defendant that prevented the relationship from occurring; (3) the defendant did such act with a conscious desire to prevent the relationship from occurring, or knew that the interference was certain, or substantially certain, to occur as a result of his conduct; and (4) the plaintiff suffered actual harm or damage as a result of the defendant's interference. *Allied Capital Corp. v. Cravens*, 67 S.W.3d 486, 491 (Tex. App.--Corpus Christi 2002, no pet.); *Baty v. Protech Ins. Agency*, 63 S.W.3d 841, 859-860 (Tex. App.--Houston [14th Dist.] 2001, no pet.)

In support of his claim for tortious interference with prospective business relations Plaintiff alleges he was offered and had accepted "a position at a large-scale funeral home in Orlando, Florida," and that such offer was rescinded after he was "unable to obtain a license to practice his profession in Florida," causing Plaintiff to suffer damages. (Plf. Am. Compl. ¶¶ 271, 276). Plaintiff asserts that in taking the actions necessary for licensure in Florida, he requested certification of his NBE scores from the Conference. (*Id*. ¶ 115). Plaintiff further asserts he was denied the license because of the Conference's refusal to provide the requested certification, and because the Conference informed the Florida licensing board that Plaintiff's scores were invalidated. (*Id*. ¶¶ 115, 142-144).

There is nothing in Plaintiff's allegations, however, to indicate the Conference acted with a conscious desire to prevent the relationship between Plaintiff and his prospective employer, or acted with a substantial certainty such relationship would be prevented. There is no evidence that the Conference was even aware of the potential contractual relationship between Plaintiff and the funeral home in question. Therefore, Plaintiff has failed to show the Conference tortiously interfered with that specific prospective contract, a required element of the claim. *See Finlan v. Dallas Indep. Sch. Dist.*, 90 S.W.3d 395, 412 (Tex. App.–Eastland 2002, pet. denied). Accordingly, the Court finds Plaintiff has failed to state claims for tortious interference with existing or prospective business relations.

### d.  Enforceability of NDA

Immediately prior to taking the NBE and as a condition of taking the test, Plaintiff was asked by the Conference to accept electronically the terms of the NDA, which Plaintiff admits he did. (Plf. Am. Compl. ¶¶ 101-03).  The NDA states in relevant part "You are expressly prohibited from disclosing, publishing, reproducing or transmitting this exam, in whole or in part, in any form or by any means, verbal or written, electronic or mechanical, for any purpose, without the prior express written permission of [the Conference]."  (*Id*. ¶ 281).

Plaintiff seeks from this Court a judgment declaring the NDA unenforceable, because it is vague and overbroad.  Plaintiff also argues the NDA itself, as well as the circumstances surrounding its adoption, are unconscionable and violative of public policy  The Conference has moved to dismiss, disagreeing on all points.

As a preliminary matter, this Court rejects Plaintiff's contention that the NDA was "vague and overbroad," and failed to give Plaintiff "notice of exactly what it prohibited."  (Resp. to Conf. Def.'s Mot. at 36).  Plaintiff argues the NDA, on its face and in application, "is not limited to protection of confidential or copyrighted information."  (*Id*.).  However, the NDA specifically proscribes "disclosing, publishing, reproducing or transmitting this exam."  And, Plaintiff acknowledges the Conference claims to "hold copyrights to certain exam questions and answer stems and that certain exam questions and answer stems constitute [the Conference's] trade secrets."  (Plf. Am. Compl. ¶ 301).  Thus, the confidentiality requirement is limited to the Conference's confidential and copyrighted test materials and is not overbroad.  Nor has Plaintiff explained how the language of the NDA is vague or ambiguous as to the conduct it prohibits.

As to Plaintiff's contention that the NDA is unconscionable, unconscionable contracts are not enforceable under Texas law.  *In re Poly-America, L.P.*, 262 S.W.3d 337, 348 (Tex. 2008).  "Unconscionability is to be determined in light of a variety of factors, which aim to prevent

13

oppression and unfair surprise; in general, a contract will be found unconscionable if it is grossly one-sided."  *Id*.  Substantive unconscionability refers to the fairness of the contractual provision itself, while procedural unconscionability refers to the circumstances surrounding adoption of the contractual provision.  *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 677 (Tex. 2006).  "Under Texas law, the party asserting unconscionability of a contract bears the burden of proving **both** procedural and substantive unconscionability."  *Ski River Dev., Inc. v. McCalla*, 167 S.W.3d 121, 136 (Tex. App.–Waco 2005, pet. denied) (emphasis in original).

A contractual term is substantively unconscionable "where the inequity of the term is so extreme as to shock the conscience."  *Besteman v. Pitcock*, 272 S.W.3d 777, 789 (Tex. App.–Texarkana 2008, no pet.)(internal citations omitted).  Factors that may contribute to a finding of unconscionability include "knowledge of the stronger party that the weaker party will be unable to receive substantial benefits from the contract" and "knowledge of the stronger party that the weaker party is unable to reasonably protect his interests by reason of physical or mental infirmities, ignorance, illiteracy or inability to understand the language of the agreement."  *Ski River*, 167 S.W.3d at 136.

Plaintiff fails to assert facts showing the NDA is unfair, oppressive, or grossly one-sided, much less shocking to the conscience.  There is nothing shocking about the Conference imposing a confidentiality requirement before disseminating information in which it claims a copyright and a proprietary interest.  Further, Plaintiff fails to show how keeping such information confidential places an undue burden on Plaintiff or otherwise renders unconscionable results.

Plaintiff also contends the circumstances surrounding his adoption of the NDA render the contract procedurally unconscionable.  Plaintiff alleges he was informed immediately prior to taking the NBE that he could either accept the terms of the NDA or not take the test and forfeit the exam fees.  (Plf. Am. Compl. ¶ 282).  Plaintiff argues this "take it or leave it" approach left him with no

option but to accept the terms, and thus the contract was an "unconscionable contract of adhesion." (Resp. to Conf. Def.'s Mot. at 36).

An adhesion contract under Texas law is "a contract in which one party has absolutely no bargaining power or ability to change the contract terms." *In re Media Arts Group, Inc.*, 116 S.W.3d 900, 911 (Tex. App.–Houston [14th Dist.] 2003, orig. proceeding). Such a contract is not automatically unconscionable, however, and the party opposing the adhesion contract must "also present some other evidence of unconscionability." *Id*. As discussed above, Plaintiff fails to do this.

In conclusion, the Court finds the Conferences' motion to dismiss should be granted with respect to Plaintiff's: (1) Section 1983 claims; (2) claims for breach of duty of good faith and fair dealing, defamation and defamation per se, and tortious interference with existing and prospective business relations; and (3) claim for a judgment declaring the NDA unenforceable.

### III. THE INDIVIDUAL CONFERENCE DEFENDANTS' MOTION

The Individual Conference Defendants argue Plaintiff's claims against them should be dismissed in their entirety because this Court lacks personal jurisdiction over them. They also, alternatively, seek dismissal for the same reasons set forth in the Conference's motion to dismiss. The Court must address the jurisdictional argument first.

### A.   Standard of Review

Rule 12(b)(2) allows a defendant to move for dismissal of an action for lack of personal jurisdiction. FED. R. CIV. P. 12(b)(6). Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons. *See* FED. R. CIV. P. 4(k)(1)(A) (service of process is effective to establish personal jurisdiction over a defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located"); *Daimler AG v. Bauman*, 134 S. Ct. 746, 753 (2014). Additionally, a federal court may only exercise personal jurisdiction

15

over a nonresident defendant "if the exercise of personal jurisdiction comports with the Due Process Clause of the Fourteenth Amendment." *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009). In this instance, the state-law and due-process inquiries merge into one, since Texas law permits the exercise of personal jurisdiction to the limits of due process. *Pervasive Software, Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 220 (5th Cir. 2012).

Due process for jurisdictional purposes consists of two elements. First, the defendant must have sufficient "minimum contacts" with the forum state. *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994). These "minimum contacts" may be analyzed in terms of specific jurisdiction or general jurisdiction. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984); *Central Freight Lines Inc. v. APA Transport Corp.*, 322 F.3d 376, 381 (5th Cir. 2003).

Specific jurisdiction exists when the contacts with the forum state arise from, or are directly related to, the cause of action. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (jurisdiction appropriate where activities "purposefully directed" at residents of forum state and litigation arises out of or relates to those activities); *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000). General jurisdiction is proper when the defendant has other "continuous and systematic" contacts with the forum unrelated to the pending litigation. *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001).

**B.   Discussion**

The Individual Conference Defendants argue the claims asserted against them should be dismissed for lack of personal jurisdiction. In response, Plaintiff does not contend general jurisdiction is proper over the Individual Conference Defendants. Rather, he maintains this Court has personal jurisdiction over the Individual Conference Defendants by virtue of their involvement in the Conference's decisions and actions, including specifically sending a letter to the Commission

defaming Plaintiff.  As Plaintiff points out, a "single act by a defendant can be enough to confer personal jurisdiction if that act gives rise to the claim being asserted." *Lewis*, 252 at 352.  Thus, a single communication directed at the forum can establish personal jurisdiction where it gives rise to an intentional tort for which jurisdiction is sought. *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 213 (5th Cir. 1999).

The Individual Conference Defendants, in turn, contend they are entitled to the protection of the fiduciary shield doctrine.  Under that doctrine, an "individual's transaction of business within the state solely as a corporate officer does not create personal jurisdiction over that individual though the state has in personam jurisdiction over the corporation." *Stuart v. Spademan*, 772 F.2d 1185, 1197 (5th Cir. 1985).  However, the fiduciary shield doctrine does not protect "a corporate officer from specific personal jurisdiction as to intentional torts or fraudulent acts." *Fairchild v. Barot*, 946 F. Supp. 2d 573, 581 (N.D. Tex. 2013).

Plaintiff argues the Individual Conference Defendants are amenable to personal jurisdiction in this Court based on the intentionally tortious conduct he has alleged.  That is, he points to his claims of defamation and tortious interference with business relations as a sufficient basis for personal jurisdiction.  However, as set forth above, the Court has concluded Plaintiff has failed to state actionable claims for relief for either defamation of tortious interference with business relations.  Thus, Plaintiff has failed to show the Individual Conference Defendants are subject to personal jurisdiction.  Accordingly, all of the claims asserted by Plaintiff against the Individual Conference Defendants should be dismissed.

## IV.  THE COMMISSION DEFENDANTS' MOTION

The Commission Defendants move to dismiss Plaintiffs' claims against them for lack of jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) or, alternatively, for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6).  Plaintiff's claims that the

17

Commission Defendants have violated his civil rights rest on three bases: (1) the Commission's alleged adoption and ratification of the Conference's decisions to invalidate his NBE scores and bar him from retaking the exam for five years; (2) the Commission's initiation of a disciplinary action based on the Conference's false allegations; and (3) the Commission's requirement that license applicants take the NBE.  The Commission Defendants move to dismiss, arguing Plaintiff lacks standing to assert his claims, and alternatively that he has failed to state a claim for relief.  In addition, the Commission moves to dismiss all claims against it as barred by the Eleventh Amendment.

**A.      Standard of Review**

The standard of review under Rule 12(b)(6) is set forth above.  Under Rule 12(b)(1), a defendant may move for dismissal for lack of subject matter jurisdiction. FED. R. CIV. P. 12(b)(1). A motion to dismiss for lack of subject matter jurisdiction must be considered before any other challenge.  *See Steel Co. v. Citizens for Better Environment,* 523 U.S. 83, 94-95 (1998) ("The requirement that jurisdiction be established as a threshold matter ... is inflexible and without exception"); *Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir. 1994) (court must find jurisdiction before determining validity of claim).  "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998).  On a Rule 12(b)(1) motion, "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *MDPhysicians & Assocs., Inc. v. State Board of Ins.*, 957 F.2d 178, 181 (5th Cir. 1992).

**B.      Discussion**

As a preliminary matter, Plaintiff concedes the Commission, a state agency that has not waived its immunity, is immune from suit in federal court under the Eleventh Amendment, and

agrees to the dismissal of all claims against the Commission itself should be dismissed.  (Resp. to Comm. Def.'s Mot. at 6).  Accordingly, all claims asserted by Plaintiff against the Commission in this action are dismissed.  *See Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 80 (2000) (state entitled to assert immunity from suit).

### 1.  Standing

The Individual Commission Defendants argue Plaintiff lacks standing because he cannot allege the violation of a constitutionally protected interest, and his claims against them should therefore be dismissed pursuant to Rule 12(b)(1).  The Supreme Court has stated the following with respect to standing:

> Over the years, our cases have established that the irreducible constitutional minimum of standing contains three elements.  First, the plaintiff must have suffered an injury in fact – an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of – the injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not the result [of] the independent action of some third party not before the court.  Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal citations and quotations omitted). More simply put, to establish standing to bring a claim under Section 1983, a plaintiff must challenge a specific action of the state actor and allege facts sufficient to show such action resulted in an actual, concrete injury.

In the present case, Plaintiff acknowledges he has not to date been deprived of his license or the ability to practice his chosen occupation in the State of Texas.  However, he maintains: (1) the Commission adopted and ratified the Conference's determinations, thus effectively invalidating Plaintiff's NBE scores and barring him from retaking the exam; (2) the Commission initiated a disciplinary proceeding against Plaintiff based on the Conference's false accusations; and (3) the Commission required Plaintiff to take and pass the NBE as a condition of obtaining a license.

Turning first to Plaintiff's contention that the Commission has violated his constitutional rights by adopting and ratifying the Conference's decisions, Plaintiff acknowledges the Commission has not yet made any determinations regarding Plaintiff's license or his ability to practice his chosen profession in this State.  Rather, he alleges on November 2, 2014 he received a letter from the Commission stating the Commission had received notice from the Conference of Plaintiff's alleged cheating and had initiated a complaint against Plaintiff.  (Plf. Am. Compl. ¶ 146).  Plaintiff further alleges he was provided an opportunity to respond to the letter in writing.  (*Id*. ¶ 147).

Absent from Plaintiff's complaint is any allegation that his license has been revoked or that he has been penalized in any other fashion.  Nor does Plaintiff allege any facts indicating the Commission has adopted the Conference's decision.  As of now, the Commission has not taken any action with respect to Plaintiff's NBE test scores and the Conference's decision to invalidate same.

Moreover, this Court has rejected Plaintiff's contention that the Commission and the Conference are so intertwined as to effectively render the Commission liable for the Conference's actions.  As discussed above, the relationship between the Conference and the Commission is not of such interdependence as to give rise to a finding the Conference is a state actor for purposes of Section 1983.  Similarly, in order to hold the state liable for the actions of a private party, the plaintiff must show there is a sufficiently close nexus between the state and the challenged action "so that the action of the latter may be fairly treated as that of the State itself."  *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982).  Normally, a state can "be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State."  *Id*.

It is the Conference that invalidated Plaintiff's scores and barred him from retaking the test, not the Commission.  The Court finds the relationship between the Conference and the Commission is not such that the Commission can fairly be held liable for the conduct of the

Conference.

The Court finds Plaintiff has failed to allege facts showing that, at this juncture, the Commission has adopted the Conference's decisions as its own, or is otherwise liable for the invalidation of Plaintiff's NBE scores and the ban on retaking the exam. Therefore, Plaintiff has failed to allege an injury in fact and lacks standing to assert claims based on this supposed constitutional violation.[1]

With respect to Plaintiff's assertion that the Commission's initiation of disciplinary proceedings based on the Conference's false accusations violates his constitutional rights, Plaintiff has alleged a specific action taken by the Commission that caused Plaintiff injury, and Plaintiff has standing to bring the claims. The same is also true with respect to Plaintiff's claim that the Commission violated his due process rights when it required him to take the NBE as a prerequisite to being licensed in Texas.

In light of the foregoing, the Court finds that Plaintiff's claims for civil rights violations based on the Commission's alleged adoption and ratification of the Conference's decisions, or otherwise based on the Commission's liability for invalidating Plaintiff's NBE scores and barring him from retaking the exam for five years, should be dismissed pursuant to Rule 12(b)(1) for lack of standing. The motion to dismiss Plaintiff's other claims against the Individual Commission Defendants for lack of standing is denied.

### 2. Initiation of Disciplinary Action

Plaintiff claims the Commission's initiation of a disciplinary action based on the

---

[1]   Although neither party raises the issue, the Court notes these claims should also be dismissed pursuant to Rule 12(b)(1) because they are not ripe for judicial resolution. One of the rationales behind the ripeness doctrine is "to protect agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Abbott Labs v. Gardner*, 387 U.S. 136,148 (1967). In determining ripeness, a court evaluates "both the fitness of the issues for judicial decision and the hardship of the parties of withholding court consideration." *Id.* at 149. Plaintiff acknowledges the Commission has made no decisions regarding his license, which he still possesses, and that he continues to practice his chosen profession. Therefore, his claims against the Commission regarding adoption of the Conference's decisions are not yet ripe for judicial resolution.

Conference's false allegations violated his rights to procedural and substantive due process, equal protection, and freedom of speech.

### a. Procedural and Substantive Due Process

The Fourteenth Amendment forbids government conduct that deprives "any person of life, liberty, or property without due process of law." U.S. CONST., amend. IV. "Procedural due process considers not the justice of a deprivation, but only the means by which the deprivation was effected." *Caine v. Hardy*, 943 F.2d 1406, 1411 (5th Cir. 1991). Substantive due process "protects individual liberty against certain government actions regardless of the fairness of the procedures used to implement them." *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992).

Plaintiff alleges he received a letter from the Commission dated November 4, 2014 stating the Commission had received notification from the Conference that Plaintiff's NBE scores had been invalidated for alleged cheating, and directing Plaintiff to respond to the complaint or face referral of the matter for administrative action. (Plf. Am. Compl. ¶¶ 146-47). Plaintiff responded in a timely matter denying the allegations. (Plf. Am. Compl. ¶ 156). According to Plaintiff, the Commission has initiated disciplinary action against him to revoke his license based on the Conference's allegations. (Plf. Am. Compl. ¶ 188).

Such allegations do not indicate Plaintiff has been denied his procedural due process rights. The essential requirements of procedural due process are simply notice and an opportunity to respond. *Cleveland Bd. of Educ. v. Loudermill*, 420 U.S. 532, 542 (1985). Plaintiff alleges he received notice of the complaint and was afforded and took advantage of the opportunity to respond before the Commission took administrative action. At this stage of the disciplinary proceedings, Plaintiff has received the procedural due process to which he was entitled.[2]

As for substantive due process, the right prevents the government from engaging in conduct

---

[2] The Court notes Plaintiff may have a viable claim going forward if the Commission violates his due process rights in connection with the disciplinary action initiated against him.

that "shocks the conscience."  *United States v. Salerno*, 481 U.S. 739, 746 (1987).  In the present case, it is hardly shocking to the conscience that a state regulatory agency would initiate a disciplinary action upon receiving notification that a licensee cheated on the requisite national qualifying exam.  Moreover, there is no violation of substantive due process rights if the government action is a rational means of advancing a legitimate government purpose. *Delahoussaye v. City of New Iberia*, 937 F.2d 144, 149 (5th Cir. 1991).  Clearly, the Commission has a legitimate purpose in ensuring that licensees meet the requisite qualifications to practice in the State, and initiating a disciplinary action to investigate allegations of cheating is a reasonable means of advancing this purpose.  Accordingly, the Court finds Plaintiff has failed to state a claim for the violation of either his procedural or substantive due process rights.

### b.  Equal Protection

The Equal Protection Clause of the Fourteenth Amendment commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws."  U.S. CONST. amend. XIV.  The basis of an equal protection claim is, thus, the requirement that all persons similarly situated should be treated alike.  *City of Cleburne v. Cleburne Living Ctr., Inc.,* 473 U.S. 432, 439 (1989); *Plyler v. Doe,* 457 U.S. 202, 216 (1982); *Piotrowski v. City of Houston,* 237 F.3d 567, 578 n.15 (5th Cir. 2001).  The Equal Protection Clause can give rise to a cause of action on behalf of a "class of one," even when the plaintiff does not allege membership in a protected or "suspect" class or group.  *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).  However, to state a claim sufficient for relief, the single plaintiff must still allege that she received intentionally different treatment from others similarly situated.  *Id.*  In addition, a plaintiff must show a discriminatory purpose or intent on the part of the defendant in order to establish a valid equal protection claim. *Sonnier v. Quarterman*, 476 F.3d 349, 368 (5th Cir. 2007).

Plaintiff argues that he has been singled out for unfavorable treatment and that others

similarly situated have not been subjected to the same disciplinary actions.  Specifically, he alleges the Conference did not treat other students from AAMI, and from other mortuary services schools, who engaged in conduct similar to him as harshly as he has been treated.  (Plf. Am. Compl. ¶¶ 221-25).  However, Plaintiff fails to allege any facts showing that the Commission, and not the Conference, treated Plaintiff differently than other applicants.  As discussed above, the conduct of the Conference cannot be conflated with that of the Commission, and there is no evidence to suggest that the Commission singled Plaintiff out for disparate treatment.  Moreover, Plaintiff has not alleged facts showing his treatment was the result of any discriminatory purpose or intent on the part of the Commission.  Accordingly, Plaintiff's claims against the Individual Commission Defendants asserting a violation of his equal protection rights are dismissed.

### c.  First Amendment

The First Amendment to the United States Constitution provides in relevant part that "Congress shall make no law . . . abridging the freedom of speech . . .."  U.S. CONST. amend. I. The First Amendment is applicable to the states by virtue of the Fourteenth Amendment.  *Everson v. Bd. of Educ.*, 330 U.S. 1, 8 (1947).  Plaintiff asserts his First Amendment rights have been violated because "Defendants" have prohibited test-takers "from (1) receiving information about the NBE prior to taking the exam; and (2) discussing with others any information about the NBE after they have taken the exam.  (Plf. Am. Compl. ¶ 207).

Plaintiff has not, however, alleged any facts to support the contention that the Commission has in any way violated his First Amendment rights by initiating a disciplinary action.  To the extent Plaintiff argues that the relationship between the Commission and the Conference is such that they should be considered joint participants in the violation of Plaintiff's First Amendment rights, as discussed above, such argument fails.  Accordingly, Plaintiff's claim against the Individual Commission Defendants for the violation of his First Amendment rights is dismissed..

### 3.  Requirement that License Applicants Take the NBE

Finally, the Individual Commission Defendants maintain Plaintiff's claim that the Commission's requirement that license applicants take the NBE violates his constitutional rights should be dismissed.[3]  In support of his claim, Plaintiff argues that Texas law requires the Commission to develop and administer the requisite licensure examinations, and that designating such responsibility to the Conference was unconstitutional.  However, this argument ignores the express language of the statute.

The Texas Occupation Code requires applicants for funeral director and embalmer licenses to take two examinations, the first a "written professionally prepared exam" and the second a "written examination developed by the commission or developed for the commission by contract." TEX. OCC. CODE § 651.255 (requirements for funeral director's license), § 651.256 (requirements for embalmer's license).  Both statutes specifically direct that the Commission "shall administer or arrange for the administration of" such exams.  *Id*.

Plaintiff does not assert the NBE fails to qualify as a written, professionally prepared exam. To the extent Plaintiff argues the Commission was somehow required to create and develop its own exam, the Court finds nothing in the language of the statute to support such a conclusion. Therefore, the Commission was acting in accordance with the statute when it required applicants to take an exam developed and administered by the Conference.  Plaintiff's due process claim is, therefore, dismissed.

---

[3]  It is not precisely clear whether Plaintiff asserts that the requirement to take the NBE violates his rights to equal protection and free speech.  To the extent Plaintiff asserts an equal protection violation, he alleges no facts to show the requirement to take the NBE is not applied to all persons seeking a licence from the Commission.  As for Plaintiff's right to freedom of expression, Plaintiff's fails to show how the Commission's requirement that license applicants take the NBE in any way violated his First Amendment rights.  The fact that the test administrator required Plaintiff to sign a confidentiality agreement regarding the test's contents does not render the Commission's requirement violative of free speech.  As discussed at length above, even if the NDA impacted Plaintiff's freedom of expression, the Commission and the Conference are not so closely entwined that the Commission can be held liable for the Conference's private conduct.

## V.  CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant International Conference of Funeral Service Examining Boards' Motion to Dismiss (Clerk's Dkt. #30) is **GRANTED IN PART AND DENIED IN PART**.  Plaintiff's claims against the Conference for the violation of his constitutional rights, for breach of duty of good faith and fair dealing, defamation and defamation per se, and tortious interference with existing and prospective business relations, as well as for a judgment declaring the Non-Disclosure Agreement unenforceable are dismissed with prejudice.

**IT IS FURTHER ORDERED** the Individual Conference Defendants' Motion to Dismiss for Lack of Personal Jurisdiction or, Alternatively, for Failure to State a Claim (Clerk's Dkt. #28) is **GRANTED**.

**IT IS FINALLY ORDERED** the Texas Funeral Service Commission Defendants' Motion to Dismiss (Clerk's Dkt. #25) is **GRANTED**.  .

**SIGNED** on September 1, 2015.


ROBERT L. PITMAN
UNITED STATES DISTRICT JUDGE